**CHRISTOPHER J. CHRISTIE**
UNITED STATES ATTORNEY
**DOROTHY DONNELLY**
ASSISTANT US ATTORNEY
Office of the United States Attorney
402 East State Street
Trenton, NJ 08608

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **TAMEIKA SMITH**, *individually and as the parent and natural guardian of* **Sincere Smith**, *a minor* | : HONORABLE JOEL PISANO : |
| Plaintiff, | : Civil No.  3-5519 |
| v. | : |
| **CHS., Inc., et al.** | **: electronically filed** |
| **Defendants.** | : |

_____
_____

Trial Brief of the United States

_____

## Table of Contents

STATEMENT OF JURISDICTIONAL FACTS . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . 2

JURIDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . 2

CAUSE OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . 8

BURDEN OF PROOF . . . . . . . . . . . . . . . . . . . . . . . . 9

PLAINTIFF HAS NOT PRODUCED EXPERT TESTIMONY ON THE STANDARD OF
CARE, THE BREACH OF THE STANDARD OR ON PROXIMATE CAUSE BASED UPON
ACTIONS TAKEN DURING PRENATAL CARE BY NURSE SAROYA, NURSE MICCIO
OR HENRY J. AUSTIN HEALTH CENTER.  FURTHER PLAINTIFF SIMILARLY
FAILED TO PRODUCE EXPERT TESTIMONY ON THE STANDARD OF CARE,
BREACH OF THE STANDARD OR ON PROXIMATE CAUSE OF PERSONAL INJURIES
TO TAMEIKA SMITH. . . . . . . . . . . . . . . . . . . . . . . . 10

THE UNITED STATES DID NOT BREACH A STANDARD OF CARE AND DID NOT
CAUSE INJURIES TO TAMEIKA OR SINCERE SMITH. . . . . . . . . 12

PLAINTIFF'S CAUSE OF ACTION IS LIMITED BY THE NOTICE OF TORT
CLAIM SUBMITTED IN THIS CASE; PLAINTIFF'S ATTEMPT TO
INTRODUCE A THEORY OF MALPRACTICE BASED OTHER GROUNDS SHOULD
BE REJECTED. . . . . . . . . . . . . . . . . . . . . . . . . 14

THE DISCRETIONARY FUNCTION EXCEPTION TO THE WAIVER OF
LIABILITY UNDER THE FTCA BARS LIABILITY ON A THEORY THAT
THE HEALTH CENTER HAD A DUTY TO OVERSEE THE ADMINISTRATION
OF PROFESSIONAL CARE AT THE HOSPITAL. . . . . . . . . . . . . 15

THE UNITED STATES DID NOT BREACH A STANDARD OF CARE
THAT PROXIMATELY CAUSED INJURY TO EITHER PLAINTIFF. . . . . . 18

THE CARE PROVIDED BY THE UNITED STATES DEPENDED UPON THE
INFORMATION PROVIDED BY THE NURSES AND THEIR NEGLIGENCE WAS
THE PRIMARY AND PROXIMATE CAUSE OF ANY INJURIES TO SINCERE
SMITH. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

AS A PARTY, THE MOTHER'S NEGLIGENCE MUST BE APPORTIONED. . . 21

THE CLAIM FOR CONTRIBUTORY NEGLIGENCE FILED SEPARATELY
PROVIDES A SOURCE FOR FUNDING A RECOVERY FOR THE CHILD . . . 22

THE COLLATERAL SOURCE RULE APPLIES AND THE UNITED STATES IS
ENTITLED TO SET OFFS FOR EDUCATIONAL BENEFITS, PAST AND FUTURE,

PROVIDED THROUGH FEDERAL FUNDING
FOR SINCERE SMITH. . . . . . . . . . . . . . . . . . . . .  22

AS AN EVIDENTIARY ISSUE, PLAINTIFFS HAVE LISTED
NUMEROUS TREATING DOCTORS IN THE FINAL PRETRIAL ORDER AND
STATED THAT THEY WILL TESTIFY ON PROGNOSIS AND THE CAUSE OF
THE PLAINTIFFS INJURIES.  RULE 26 PRECLUDES SUCH TESTIMONY. .  24

CONCLUSION   . . . . . . . . . . . . . . . . . . . . . . .  24

FEDERAL CASES

Allen v. Parkland School Dist.
230 Fed.Appx. 189 (3d Cir.2007) . . . . . . . . . . . . . . . 24

American Fire & Casualty Co. v. Finn,
341 U.S. 6, 17-18 (1951) . . . . . . . . . . . . . . . . . . 2

Berkovitz v. United States,
486 U.S. 531, 536 (1988) . . . . . . . . . . . . . . . . . 16

Bernard v. U.S. Lines, Inc.,
475 F.2d 1134, 1136 (4th Cir. 1973) . . . . . . . . . . . . 3

Best Berrings Co. v. United States,
463 F.2d 1177, 1179 (7th Cir. 1972) . . . . . . . . . . . . 3

Brooks v. United States,
337 U.S. 49, 51, 69 S.Ct. 918, 919, 93 L.Ed. 1200 (1949) . . 23

Ciccarone v. United States,
486 F.2d 253, 257 (3d Cir. 1973) . . . . . . . . . . . . . 8

Claremont Aircraft, Inc. v. United States,
420 F.2d 892 (9th Cir. 1970) . . . . . . . . . . . . . . . 3

Conn v. United States,
867 F.2d 916, 918 (6th Cir.1989) . . . . . . . . . . . . . 15

DeGennaro v. Franciscan Health Systems of New Jersey, Inc.
2007 WL 1159714 . . . . . . . . . . . . . . . . . . . . . 19

Duplan v. U.S.,
188 F.3d 1195 . . . . . . . . . . . . . . . . . . . . . . 7

Ins. Corp. Of Ireland, LTD. V. Compagnie des Bauxites de Guinee,
456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) . . . 7

Heil v. United States,
449 F.2d 124, 126 (5th Cir. 1971) . . . . . . . . . . . . . 3

Louie v United States,
776 F.2d 819, 822 (9th Cir. 1985) . . . . . . . . . . . . . 12

McNeil v. United States,
508 U.S. 106 (1993) . . . . . . . . . . . . . . . . 1, 5-7, 14

Melo v. United States,

505 F.2d 1026, 1028 (8th Cir. 1974) . . . . . . . . . . . . . . . 3

Peterson v. United States,
428 F.2d 369 (8th Cir. 1970) . . . . . . . . . . . . . . . . . . 3

Phillips v. American Honda Motor Co.,
285 Fed. Appx. 537,(11th Cir. 2007) . . . . . . . . . . . . . . 24

Reo v. U.S. Postal Service,
98 F.3d 73, 75 (3d Cir. 1996) . . . . . . . . . . . . . . . . . 8

Richards v. United States,
369 U.S. 1, 6-16 (1962) . . . . . . . . . . . . . . . . . . . . 8

Richardson v. United States,
831 F. Supp 657, 661 (N.D.In.1993) . . . . . . . . . . . . . . 14

Sea-Land Serv., Inc. v. United States,
919 F.2d 888, 892 (3d Cir. 1990) . . . . . . . . . . . . . . . 17

U.S.F.G. v. United States,
837 F.2d 116, 120 (3d Cir.), cert. denied, 487 U.S. 1235 (1988)17

United States v. Gaubert,
499 U.S. 315, 325 (1991) . . . . . . . . . . . . . . . . . . . 17

United States v. Kubrick,
444 U.S. 110, 117-118 (1979) . . . . . . . . . . . . . . . . . 15


STATE CASES

Bohn v. Hudson & M.R. Co.,
16 N.J. 180, 08 A.2d 5 (1954) . . . . . . . . . . . . . . . . . 9

Brown v. Racquet Club of Bricktown,
95 N.J. 280, 286 (1984) . . . . . . . . . . . . . . . . . . . . 9

Das v. Thani,
171 N.J. 518, 527-528, 795 A.2d 876 (2002) . . . . . . . . . 20

Dziedzic v. St. John's Cleaners & Shirt Launderers, Inc.,
53 N.J. 157, 249 A.2d 382 (1969) . . . . . . . . . . . . . . . 9

Gardner v. Pawliw,
285 N.J. Super. 113 (App. Div. 1995), reversed on other grounds,
150 N.J. 359, 696 A.2d 599 (1997) . . . . . . . . . . . . . . 9,
                                                               11

German v. Matriss,
55 N.J. 193 (1970) . . . . . . . . . . . . . . . . . . . . . . 9, 10

Kiss v. Jacob,
138 N.J. 278 (1994) . . . . . . . . . . . . . . . . . . . . . . 22

Lanzet v. Greenberg,
126 N.J. 168, 193, 594 A.2d 1309 (1991) . . . . . . . . . . . 10

Nguyen v. Tama,
298 N.J. super 41 . . . . . . . . . . . . . . . . . . . . . . 12

Ostrowski v. Azzara,
111 N.J. 429, 439, 545 A.2d 148 (1988) . . . . . . . . . . . 21

Reynolds v. Gonzalez,
172 N.J. 266, 280, 798 A.2d 67, 75 (2002) . . . . . . . . . . 19

Rosenberg v. Cahill,
99 N.J. 318, 429 A.2d 371 (1985) . . . . . . . . . . . . . 9, 11

Sanzari v. Rosenfeld,
34 N.J. 128, 134, 167 A.2d 625, 628 (1961) . . . . . . . 10, 11

Scafadi v. Seiler,
119 N.J. 93,108, 574 A.2d 398 (1990) . . . . . . . . . . . . 19


FEDERAL STATUTES

2 U.S. Code Cong. & Ad. News 2515 . . . . . . . . . . . . . . . 3

28 U.S.C. s 2401(b) . . . . . . . . . . . . . . . . . . . . . 5, 6

28 U.S.C. § 1346(b) . . . . . . . . . . . . . . . . . . . . . . 9

28 U.S.C. § 2401(b) . . . . . . . . . . . . . . . . . . . . 2, 5, 6

28 U.S.C. § 2674 . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. § 2675(a) . . . . . . . . . . . . . . . . . . . . . 15

28 U.S.C. § 2679 . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 2679(d) . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 2680(a) . . . . . . . . . . . . . . . . . . . . . 16

28 U.S.C. §2675(a) . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. §§ 1346(b) . . . . . . . . . . . . . . . . . . . . 8

42 U.S.C. § 233(g)(1)(A) . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §§ 1346(b), 2671 . . . . . . . . . . . . . . . . . 8

STATE STATUTES

N.J.S.A. 2A: 15-5.3 . . . . . . . . . . . . . . . . . . . . 21

N.J.S.A. 2A:15-5.1 . . . . . . . . . . . . . . . . . . . . 21

JURISDICTIONAL FACTS

1.   Plaintiff filed suit in this matter in the Superior Court of
     New Jersey on July 3, 2003. See docket entry 1.

2.   The defendants named in the suit included Henry J. Austin
     Health Center, Dr. Julene Murage, Karen Saroya and L.
     Miccio. Id.

3.   The United States filed a notice of removal on November 23,
     2003 on behalf of these defendants noting that they were
     federal employees pursuant to the Federally Supported Health
     Care Assistance Act of 1992, 42 U.S.C. § 233(g)(1)(A).

4.   The department of Health and Human Services issued a letter
     deeming these parties federal employees and the U.S.
     Attorney issued a certification of scope employment for the
     health Center, Dr. Murage, Karen Saroya and L. Miccio ,
     filed on November 28, 2003. Docket no. 4.

5.   A consent order was then entered substituting the United
     States for these individuals and the Center, and
     administratively terminating action as to the United States.
     Docket no. 5.(exhibit 1).

6.   Plaintiffs sent the standard form 95 to HHS prior to entry
     of the court's order on April 21, 2004.  The claim was
     received by the Department of Health and Human Services on
     March 30, 2004.

7.   Plaintiffs then filed a motion to reopen the matter and to
     shorten time periods in which to serve and require the
     United States to answer on April 28, 2005. See (exhibit 3
     order of the Magistrate Judge).

8.   The United States opposed the motion noting that the
     original state court complaint and the removed action
     against the United States was no longer viable under McNeil
     v. United States, 508 U.S. 106 (1993) and noted the
     complaint was subject to dismissal.  The letter further
     noted that there was a jurisdictional defect and argued that
     a new or amended complaint should be filed. See docket no 7
     filed 4/28/2005 (exhibit 2).

9.   The Honorable Magistrate Judge Tonianne Bongiovanni ordered
     that plaintiff's file an amended complaint.(exhibit 5).

10.  The amended complaint was filed on June 29, 2005.

11.  The tort claim was denied by the agency on November 14, 2005.

## **STATEMENT OF THE CASE**

Plaintiffs Tameika and Sincere Smith have filed suit against the United States under the Federal Tort Claims Act. [FTCA]. Their suit is barred by their failure to follow the steps in 28 U.S.C. § 2679.  As a result, this court lacks jurisdiction over their claim for personal injuries as a result of alleged malpractice by medical care provided by deemed employees of the United States, Nurses Miccio and Saroya, Henry J. Austin Health Center and Dr. Julene Murage.

## **JURISDICTION**

The United States disputes jurisdiction. This court is required to examine its jurisdiction and a party may challenge jurisdiction at any time.  American Fire & Casualty Co. v. Finn, 341 U.S. 6, 17-18 (1951).  Plaintiffs have failed to properly exhaust administrative remedies and the suit must be dismissed.

Plaintiffs clearly failed in the first instance to file a notice of tort claim with the period specified by 28 U.S.C. § 2401(b), i.e., within two years of the injuries to Plaintiffs. In 28 U.S.C. §2401(b), Congress has specifically provided that:

> (b) a tort claim against the United States shall be forever barred <u>unless it is presented in writing to the appropriate federal agency within two years</u>.  After such claim accrues... (emphasis added)

The requirement that an administrative claim first be submitted

to the federal agency in questions, as a precondition to a torts
suit against the United States, is reiterated at 28 U.S.C.
§2675(a):

> (a) an action shall not be instituted upon a
> claim against the United States for money
> damages for injuries or loss of property or
> personal or death caused by the negligent or
> wrongful act or omission of any employee of
> the government while acting within the scope
> of his office or employment, <u>unless the</u>
> <u>claimant shall have first presented the claim</u>
> <u>to the appropriate federal agency</u> and his
> claim shall have been finally denied by the
> agency in writing....(emphasis added)

In requiring the filing of an administrative claim, Congress
intended to "ease court congestion and avoid unnecessary
litigation, while making it possible for the government to
expedite the fair settlement of tort claims asserted against the
United States."  S.Rept. No. 1327, 89 Cong., 2d Sess. 6,
reprinted in (1966) 2 U.S. Code Cong. & Ad. News 2515, 2516.

    These provisions are clear and mandatory.  <u>Melo v. United</u>
<u>States</u>, 505 F.2d 1026, 1028 (8th Cir. 1974).  Every tort claim
against the United States must first be presented to the federal
agencies concerned, within two years after the claim accrues as a
condition precedent to suit.  <u>Bernard v. U.S. Lines, Inc.</u>, 475
F.2d 1134, 1136 (4th Cir. 1973); <u>Claremont Aircraft, Inc. v.</u>
<u>United States</u>, 420 F.2d 892 (9th Cir. 1970).  If a plaintiff
files suit without first having submitted a timely claim for
administrative adjustment, the suit must be dismissed.  <u>Bernard</u>

v. U.S. Lines, Inc., supra, 475 F.2d at 1136; Best Berrings Co.
v. United States, 463 F.2d 1177, 1179 (7th Cir. 1972); Heil v.
United States, 449 F.2d 124, 126 (5th Cir. 1971); Peterson v.
United States, 428 F.2d 369 (8th Cir. 1970).

The complaint in this matter recites that the injuries
occurred in 2001 when Sincere Smith was born.  Suit was filed in
state court in 2003, but the United States was not named as a
party and Plaintiffs had not filed a notice of tort claim.  As
noted in the declarations filed in this matter and the removal
filed on this docket, the United States removed this matter to
federal court.  A scope of employment certification was filed and
the United States deemed Nurses Saroya, Miccio, Henry J. Austin
and Dr. Julene Murage to be employees of the United States.  The
United States was substituted for the defendants.  An order
substituting the defendants and administratively terminating the
action was filed on                Because Plaintiffs had not
appropriately exhausted administrative remedies, the filing of a
this action is therefore governed by the provisions of 28 U.S.C.
§ 2679(d) (4)-(5), sometimes called a savings clause,  which
states:

> **(4)** Upon certification, any action or proceeding subject
> to paragraph (1), (2), or (3) shall proceed in the same
> manner as any action against the United States filed
> pursuant to section 1346(b) of this title and shall be
> subject to the limitations and exceptions applicable to
> those actions.
>
> Whenever an action or proceeding in which the United

States is substituted as the party defendant under this subsection is dismissed for failure first to present a claim pursuant to section 2675(a) of this title, such a claim shall be deemed to be timely presented under section 2401(b) of this title if--

**(A)** the claim would have been timely had it been filed on the date the underlying civil action was commenced, and

**(B)** the claim is presented to the appropriate Federal agency within 60 days after dismissal of the civil action.

Thus, the operative dates are the date the court entered its order terminating the case against the United States April 21, 2004, and the date that the Plaintiff presented the Notice of Tort Claim to the Federal Agency, March 30, 2004. Plaintiffs filed the notice of tort claim before the court administratively terminated the action as to the United States.  Thus, plaintiffs did not comply with the plain language of  the statute that required the claim to be presented with 60 days after the dismissal of the civil action.  The presentation of the claim was outside the jurisdictional requirements of § 2679 because it was sent prematurely.  It was simply not effective to exhaust administrative remedies.

The requirements of exhaustion of administrative remedies are jurisdictional and cannot be waived.  McNeil v. United States, 508 U.S. 106 (1993).  McNeil held that a complaint filed without exhaustion of administrative remedies could not be remedied by an amendment to the original complaint after such remedies had been exhausted.  The McNeil court found that a new

complaint was required.  The court looked at the plain language
of 28 U.S.C. § 2401(b) which requires that an action must be
filed within six months after the date of mailing, by certified
or registered mail, of notice of final denial of the claim by the
agency to which it was presented.  28 U.S.C. s 2401(b).
Just as in <u>McNeil</u>, the filing of a notice of tort claim not in
compliance with the plain language of the statute fails to
exhaust administrative remedies and confer jurisdiction upon the
court.

     The United States also filed a motion noting additional
jurisdictional deficiencies.  In the motion it was noted that the
Plaintiffs, upon deeming the claim denied, were required to file
a new complaint.  Plaintiffs sought by motion to reinstate the
original complaint and that motion was opposed by the government
citing <u>McNeil v. United States</u>, 508 U.S. 106 (1993).  <u>McNeil</u> held
that a complaint filed without exhaustion of administrative
remedies could not be remedied by an amendment to the original
complaint after such remedies had been exhausted.  The <u>McNeil</u>
court found that the plain language of 28 U.S.C. § 2401(b)
required that an action must be filed within six months after the
date of mailing, by certified or registered mail, of notice of
final denial of the claim by the agency to which it was
presented.  28 U.S.C. s 2401(b).  Plaintiffs in McNeil and
Plaintiff's here filed to file an "action. " Most courts have

agreed that simply filing an amended complaint will not fulfill the requirements of the statute.

When plaintiff sought reinstatement of the original state court complaint, the opposition of the United States to Plaintiff's motion stated: "I believe that the proper course requires that Plaintiff file an amended or new complaint against the United States reciting the exhaustion of administrative remedies." See document 7 page 2 filed on the docket.  An order was entered by the Honorable Magistrate Judge permitting an amendment of the complaint.  See document 9 filed on 6/10/05.

As noted, the court in McNeil held that a complaint filed without exhaustion of administrative remedies could not be remedied by an amendment to the original complaint after such remedies had been exhausted.  Likewise in the instant case, there was a failure to comply with the jurisdictional terms of § 2679.  The order of the magistrate judge permitting an amendment to the pleadings could not correct the underlying defect and did not provide the court with jurisdiction.  See McNeil v. United States, 508 U.S. 106 (1993).  Objections to subject matter jurisdiction cannot be waived nor can parties by consent confer jurisdiction over a dispute.  Ins. Corp. Of Ireland, LTD. V. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).  But, see Duplan v. U.S., 188 F.3d 1195, 1999(10th Cir.1999) holding that an agreement to treat an

amended complaint as a new action was permissible).

These failures, the non-compliance with the savings clause and the filing of an amended complaint rather than a new complaint, does not permit a finding that the administrative exhaustion requirement of the Tort Claims Act has been met. Having ignored the statutory requirements, Plaintiff's claim must be dismissed.

A separate motion has been filed with regard to this issue. Jurisdiction is also lacking over any claim still reflected in the docket against Nurses Miccio, Saroya, Dr. Murage and Henry J. Austin Health Center in their individual capacity.  The docket should have terminated claims against these persons following substitution by the United States.  There is no jurisdiction over any claim against individually named employees following substitution.

## CAUSE OF ACTION

If there were jurisdiction, this cause of action against the United States for negligence would be governed by the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq.  The act provides a limited waiver of sovereign immunity that "subjects the United States to tort liability for negligence." Reo v. U.S. Postal Service, 98 F.3d 73, 75 (3d Cir. 1996). The wrongfulness of an act is judged as set forth in in 28 U.S.C. § 2674,  "in the same manner and the to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.  Such an action is

controlled by the law of the place where the alleged negligent acts or omissions occurred.  28 U.S.C. §§ 1346(b), 2672. Accordingly, in this case, New Jersey law would govern all substantive issues of liability regarding issues of malpractice and damages.  28 U.S.C. §§ 1346(b), 2674; <u>Richards v. United States</u>, 369 U.S. 1, 6-16 (1962); <u>Ciccarone v. United States</u>, 486 F.2d 253, 257 (3d Cir. 1973).

**<u>BURDEN OF PROOF</u>**

Plaintiffs, to prevail against the United States under the Federal Tort Claims Act, must prove that their injuries are caused by the "negligent or wrongful act or omission of the employee of the government." 28 U.S.C. § 1346(b).  To prove negligence under New Jersey law, the plaintiff must prove that the defendant breached a duty of reasonable care which constituted the proximate cause of the plaintiff's injuries. <u>Brown v. Racquet Club of Bricktown</u>, 95 N.J. 280, 286 (1984) [citations omitted].

It would be plaintiffs' further burden to prove that the defendant's alleged negligence was the proximate cause of his injuries, and to prove the extent of his injuries.  <u>Dziedzic v. St. John's Cleaners & Shirt Launderers, Inc.</u>, 53 N.J. 157, 249 A.2d 382 (1969); <u>Bohn v. Hudson & M.R. Co.</u>, 16 N.J. 180, 08 A.2d 5 (1954).

This is a medical malpractice action, and in order for Tameika or Sincere Smith to maintain that a claim that medical malpractice in the provision of care caused her physical injury,

she plaintiff must produce expert testimony.  German v. Matriss, 55 N.J. 193 (1970).  Plaintiff's expert testimony must address the standard of care, Rosenberg by Rosenberg v. Cahill, 99 N.J. 318, 429 A.2d 371 (1985), and proximate cause.  Gardner v. Pawliw, 285 N.J. Super. 113 (App. Div. 1995), reversed on other grounds, 150 N.J. 359, 696 A.2d 599 (1997).  Without such expert testimony the claim should be dismissed.  See Sanzari v. Rosenfeld, 34 N.J. 128, 134, 167 A.2d 625, 628 (1961).

The starting point of any analysis of a tort action is the duty of care, and in a medical malpractice action that duty is set forth by expert testimony. There is an exception to the presentation of expert testimony known as the common knowledge doctrine but it does not apply to Plaintiff's case where the issues involve the provision of preeclamptic care to the mother and child.  This exception does apply to Tameika Smith's failure to attend scheduled visits for her prenatal care.

**PLAINTIFF HAS NOT PRODUCED EXPERT TESTIMONY ON THE STANDARD OF CARE, THE BREACH OF THE STANDARD OR ON PROXIMATE CAUSE BASED UPON ACTIONS TAKEN DURING PRENATAL CARE BY NURSE SAROYA, NURSE MICCIO OR HENRY J. AUSTIN HEALTH CENTER. FURTHER PLAINTIFF SIMILARLY FAILED TO PRODUCE EXPERT TESTIMONY ON THE STANDARD OF CARE, BREACH OF THE STANDARD OR ON PROXIMATE CAUSE OF PERSONAL INJURIES TO TAMEIKA SMITH.**

This is a medical malpractice case and Plaintiffs, to prove injuries to mother and child based upon failures of medical care, need to produce expert testimony to set the standard of care applicable and to show deviation therefrom.  In order to establish malpractice by medical professionals plaintiff must produce expert testimony.  Germann v. Matriss, 55 N.J. 193, 206

A.2d 825 (1970).  <u>See</u> <u>also</u> the discussion in the dissent of J.
Pollock in <u>Lanzet v. Greenberg</u>, 126 N.J. 168, 193, 594 A.2d 1309
(1991).  Plaintiff's expert testimony must address the standard
of care, <u>Rosenberg by Rosenberg v. Cahill</u>, 99 N.J. 318, 325, 492
A.2d 371 (1985) and proximate cause, <u>Gardner v. Pawliw</u>, 285
N.J.Super. 113, 121, 666 A.2d 592 (A.D. 1995), <u>reversed on other</u>
<u>grounds</u>, 150 N.J. 359, 696 A.2d 599 (1997).      Without
appropriate expert testimony, a claim should be dismissed.
<u>Sanzari v. Rosenfeld</u>, 34 N.J. 128, 135, 167 A.2d 625 (1961).
Plaintiff's expert reports did not indicate any breach of a
standard of care by Nurses Miccio or Saroya or Henry J. Austin
Health Center.  The nurses and center were involved in the
provision of prenatal care.  All experts directed their opinions
to the day of delivery, as explained in these defendants' motions
for partial summary judgment filed on January 28, 2008. For the
reasons in the brief and reply brief filed in support of that
motion, judgment should be entered on these claims against
Miccio, Saroya or the health center.

Plaintiff has produced expert reports related only to the
care and injuries of Sincere Smith.[1]  The defendants have also
produced expert reports related to the care and injuries of
Sincere Smith.  Claims for the personal injuries of Tameika

---

[1]The United States has moved to dismiss claims of Tameika
Smith for personal injuries including claims for emotional
distress and physical injuries caused by medical malpractice.  No
expert reports indicated that any breach of a standard of care
caused injury to Tameika Smith.  We incorporate those arguments
into this brief without repeating them.

Smith, including any claim for emotional distress or other injury should be dismissed or judgment entered for defendant.

**THE UNITED STATES DID NOT BREACH A STANDARD OF CARE AND DID NOT CAUSE INJURIES TO TAMEIKA OR SINCERE SMITH.**

In FTCA cases, the extent of the government's duty of care in an FTCA case is a question of law that is determined by reference to state law.  Louie v United States, 776 F.2d 819, 822 (9th Cir. 1985). Under New Jersey law, in cases involving malpractice, the law recognizes that the practice of medicine is not an exact science and even adherence to accepted medical standards will not prevent a poor or unanticipated result. Nguyen v. Tama, 298 N.J. super 41 (App.Div. 1997).  If the defendant has complied with the accepted standard of medical care than he or she is not liable regardless of the result.

In this case the evidence will show that Plaintiff Tameika Smith failed to attend required prenatal care visits.  Her failure prevented the timely detection of a condition known as preeclampsia.  Testimony will indicate that the cause of the condition is unknown, but the symptoms of high blood pressure and the presence of protein in the urine enable the condition to be detected.  Testimony will also show that Plaintiff was irregular in her attendance at prenatal care, often agitated during visits and that problems with Tameika's living conditions and relationships caused her to be upset.  Plaintiff's expert has given an opinion that the prenatal care was unremarkable.  While it was unremarkable on the issue of the providers, it is

remarkable that Tameika Smith failed to attend her appointments, particularly when warned to return to the Health Center on the day following her triage visit at Mercer Hospital on June 23, 2008.  During that visit Tameika Smith initially had high blood pressure but it returned to normal during the visit.  She was warned to return for follow up the next day. She did not. Testimony of the prenatal care providers will also establish that Tameika Smith was warned of the need to keep regular medical appointments, that she was given phone numbers of the nurse midwives to enable her to call with questions or emergencies. After missing her last two prenatal care appointments, Tameika Smith showed up at the hospital in a preeclamptic state.  The record reflects that she was plus 4 on protein in the urine, and had elevated blood pressures.  Dr. Julene Murage appropriately ordered her admitted to the hospital and appropriately ordered the administration of magnesium sulfate to bring down the patient's blood pressure.

The doctor will testify during this trial discussing her treatment and its appropriateness. She is expected to explain the delicate balance that must be kept to insure that injury does not occur to the mother.  There is a danger of convulsions or stroke for the mother. The balance must also consider injury to the child if the blood pressure is decreased too rapidly.

Given the information conveyed to Dr.Murage by the nurses, the doctor and her expert, Dr. Luciani, will testify that Dr. Murage gave appropriate care to Tameika Smith and Sincere Smith.

Dr. Luciani's testimony will prove that the injuries to Sincere Smith occurred prior to his mother's arrival at the hospital.

> **PLAINTIFF'S CAUSE OF ACTION IS LIMITED BY THE NOTICE OF TORT CLAIM SUBMITTED IN THIS CASE; PLAINTIFF'S ATTEMPT TO INTRODUCE A THEORY OF MALPRACTICE BASED OTHER GROUNDS SHOULD BE REJECTED.**

Under the FTCA, a claimant file an administrative claim with the agency as a precondition to recovery.  28 U.S.C.§2675.[2/] Richardson v. United States, 831 F. Supp 657, 661 (N.D.In.1993). The statutory language of this act is clear and the court cannot enlarge that consent to be sued which Congress has undertaken so carefully to limit.  McNeil v. United States, 508 U.S. 106, 113 S.Ct. 1980, 1984, 124 L.Ed.2d 21 (1993) (requiring "strict adherence to the procedural requirements" of section 2675(a)). The presentment of an administrative claim is a jurisdictional prerequisite to filing suit.  United States v. Kubrick, 444 U.S. 110, 117-118 (1979).  To satisfy the administrative "presentment" requirement of 28 U.S.C. § 2675(a), an administrative claim must:

---

[2] Section 2675(a) provides:
An action shall not be instituted upon a claim against the United States  for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee  of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.  The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.  The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

(1) give the Agency written notice of the claim sufficient to enable the Agency to investigate and (2) place a value on the claim.  <u>Conn v. United States</u>, 867 F.2d 916, 918 (6th Cir.1989).

**THE DISCRETIONARY FUNCTION EXCEPTION TO THE WAIVER OF LIABILITY UNDER THE FTCA BARS LIABILITY ON A THEORY THAT THE HEALTH CENTER HAD A DUTY TO OVERSEE THE ADMINISTRATION OF PROFESSIONAL CARE AT THE HOSPITAL.**

Defendant United States moved for partial summary judgment on Count V of the complaint that alleged negligence against the Henry J. Austin Health Care Center.  The motion relied upon the failure of any expert report to reflect a standard of care that was breached by the health care center.  Indeed, none of Plaintiff's reports named the health care center nor did they address the prenatal care provided at the center.

In a bid to save a cause of action against the health care center, the Plaintiff argued that the Center was equivalent to the hospital and that the mention of the hospital's failure with regard to protocols sufficed to maintain a cause of action against the center.  To the extent that this claim survives the motion, it is barred by the discretionary function exception to liability under the Federal Tort Claims Act. Under the FTCA, the United States has also retained its immunity against

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).  This provision of the Act is commonly known as the discretionary function exception.  The United States is immune from all conduct within the purview of this exception regardless of whether the agents or employees of the government committed an abuse of discretion or acted negligently.  See U.S.F.G. v. United States, 837 F.2d 116, 120 (3d Cir.), cert. denied, 487 U.S. 1235 (1988).

The Supreme Court has detailed a two-part inquiry to determine whether the discretionary function exception applies. "[A] court must first consider whether the action is a matter of choice for the acting employee." Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536 (1988).  Second, the court must determine whether the element of judgment involved "is the kind that the discretionary function exception was designed to shield." Id.  Under the second prong, the court must determine whether the discretionary actions or decisions at issue were "based on considerations of public policy." Id. at 537.  "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and whether they are susceptible to policy analysis." United States v. Gaubert, 499 U.S. 315, 325 (1991).  See also Sea-Land Serv., Inc. v. United States, 919 F.2d 888, 892 (3d Cir. 1990) (holding that decision to operated asbestos-containing ships presented significant

question of resource allocation and was therefore "susceptible to policy analysis"); U.S.F.&G., 837 F.2d at 121 ("it is irrelevant whether the government employee actually balanced economic, social and political concerns in reaching his or her decision..., [t]he test is not whether the government actually considered each possible alternative in the universe of options, but whether the conduct was of the type associated with the exercise of official discretion.").

### THE UNITED STATES DID NOT BREACH A STANDARD OF CARE THAT PROXIMATELY CAUSED INJURY TO EITHER PLAINTIFF.

In a medical malpractice case "the standard of practice to which (the defendant-practictioner) failed to adhere must be established by expert testimony."  In motions for partial summary judgment the United States noted that the expert reports provided by Plaintiffs failed to set the standard of practice for the nurse midwives Miccio and Saroya as well as Henry J. Austin Health Center.  The medical reports also failed to indicate that any conduct of these three resulted in any injury to plaintiffs.  The reports, instead, are confined to the provision of medical care on the day of the delivery, and there is no evidence that either of the midwives or Henry J. Austin Health Center's practices or policies affected that delivery.  If summary judgment is not granted on these issues, then judgment at the end of Plaintiff's case should be granted.

Based upon the experts reports submitted by the Plaintiffs,

the issues in this case deal with the less than four hours
devoted to care of Tameika Smith and delivery of Sincere Smith on
July 5, 2008.  Of course in determining whether there was a
deviation from an accepted standard of care, the law recognizes
that the practice of medicine is not an exact science.  A doctor
who provides care that meets the standard is not responsible for
a poor or unanticipated result.  Model Jury Charge, Civil §
5.36A.

Indeed, in determining whether there was malpractice, it
must be noted that no expert report indicates that any defendant
in this case was responsible for the preeclamptic condition with
which Tameika Smith was afflicted on the day she presented to
Capital Health Systems Hospital.  Tameika Smith and her son
Sincere Smith were already subject to the conditions of
preeclampsia that were adverse to the health of the mother and
adverse in a different way to the child.   The testimony will
show that the doctor and hospital defendants met a woman who had
a preexistent condition, preeclampsia[3], not caused by any of
them.

Faced with this preexisting condition, the factfinder must
use the substantial factor analysis to determine whether there is
evidence "demonstrating within a reasonable degree of medical
probability that negligent treatment increased the risk of harm

---

[3]The evidence will show that preeclampsia is fairly common,
but of unknown origins.  It is dangerous to the mother who can
suffer seizures, strokes, coma, brain hemorrhage and death.  The
increase in blood pressure causes spasm of the blood vessels with
resulting damage to the vessel.

posed by the preexistent condition." <u>Scafadi v. Seiler,</u> 119 N.J. 93,108, 574 A.2d 398 (1990). There are three inquiries required by this test, "1) whether one or more of defendants deviated from the standard of care in failing to diagnose or rendering treatment, 2) whether, within a reasonable degree of medical probability, their negligence increased the risk or lessened the chance of avoiding the harm threatened by the preexisting condition; and whether the increased risk of or lost chance to avid the harm posed was a substantial factor in bringing about the harm." <u>DeGennaro v. Franciscan Health Systems of New Jersey, Inc</u>. 2007 WL 1159714 (App.Div. 2007) citing <u>Reynolds v. Gonzalez,</u> 172 N.J. 266, 280, 798 A.2d 67, 75 (2002). Damages are to be apportioned to reflect the lost chance of recovery attributable to the defendant's negligence. <u>Id.</u>

In this case the defendants were also faced with a balancing of courses of action. The evidence will demonstrate that the protection of the mother required stabilization of her condition through the methods used while the interests of the child might require a separate set of treatment. When a doctor selects one of two courses, either of which has substantial support as proper practice by the medical profession, a claim of malpractice cannot be predicated solely on the course pursued. This is known as the medical judgment rule and applies when there is a selection of one of two or more generally accepted courses of treatment. "The course of treatment followed must be an 'equally acceptable approach' in order not to be a deviation from the appropriate

standard of care.  <u>Das v. Thani</u>, 171 N.J. 518, 527-528, 795 A.2d 876 (2002).

The evidence in this case will also demonstrate that no action of the doctor injured Plaintiffs.  Plaintiff Tameika Smith delayed her presentation at the hospital, failed to obtain appropriate prenatal care and those actions cause injury to Sincere Smith before her presentation to the hospital.  Expert medical testimony will establish that the injury occurred prior to Plaintiffs arrival at the hospital.  Thus even if there was a deviation, it was not a substantial factor in bringing about the ultimate harm to Sincere or Tameika Smith.

**THE CARE PROVIDED BY THE UNITED STATES DEPENDED UPON THE INFORMATION PROVIDED BY THE NURSES AND THEIR NEGLIGENCE WAS THE PRIMARY AND PROXIMATE CAUSE OF ANY INJURIES TO SINCERE SMITH.**

The evidence in this case will demonstrate that the nurses at Capital Health Systems failed to adequately read the fetal monitor and failed to provide appropriate information to the defendant doctor. The evidence will establish that the doctor depended upon the erroneous information and if any injury is found to have been caused to Sincere or Tameika Smith through care provided on July 5, 2001, then the nurses are a significant if not sole factor in the cause of such injury.   Expert evidence, however, will demonstrate that the injury to Sincere Smith occurred prior to the mother's arrival at the hospital.

**AS A PARTY, THE MOTHER'S NEGLIGENCE MUST BE APPORTIONED.**

Negligence law calls for an apportionment of damages when a plaintiff's antecedent negligence is a substantial contributing

factor in increasing the harm which ensues.  <u>Ostrowski v. Azzara</u>, 111 N.J. 429, 439, 545 A.2d 148 (1988), citing Restatement (second) of Torts, §465 at 510-11.  That is, the United States is "liable only for the amount of harm actually caused by its negligence." <u>Id.</u>  N.J.S.A. 2A:15-5.1 provides that the negligence of the person seeking recovery should be compared to the combined negligence of the persons against whom recovery is sought. A molding of the verdict occurs in accord with the N.J.S.A. 2A: 15-5.3.  Here Plaintiff Tameika Smith failed to obtain appropriate medical care despite the instructions given her with regard to conditions requiring medical attention.  Her delay not only contributed to the injuries, but caused the injuries to herself and her child.

### THE CLAIM FOR CONTRIBUTORY NEGLIGENCE FILED SEPARATELY PROVIDES A SOURCE FOR FUNDING A RECOVERY FOR THE CHILD

The United States filed a separate claim under N.J.S.A. 2A: 53 A-1. Should the defendant United States pay more than the pro rata share of a judgment in the underlying case, then the new complaint serves as a vehicle to obtain a judgment against Tameika Smith for her share of any damages to Sincere Smith. Thus any recovery made by Plaintiff Tameika Smith in this action should be deposited in court pending an outcome in the collateral suit.

### THE COLLATERAL SOURCE RULE APPLIES AND THE UNITED STATES IS ENTITLED TO SET OFFS FOR EDUCATIONAL BENEFITS, PAST AND FUTURE, PROVIDED THROUGH FEDERAL FUNDING FOR SINCERE SMITH.

The New Jersey legislature has statutorily revised the

common law collateral source rule in this state. <u>Kiss v. Jacob</u>, 138 N.J. 278 (1994).  The legislation now provides:

> 2A:15-97. In any civil action brought for personal injury or death, except actions brought pursuant to the provisions of P.L.1972, c. 70 (C. 39:6A-1 et seq.), if a plaintiff receives or is entitled to receive benefits for the injuries allegedly incurred from any other source other than a joint tortfeasor, the benefits, other than workers' compensation benefits or the proceeds from a life insurance policy, shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff, less any premium paid to an insurer directly by the plaintiff or by any member of the plaintiff's family on behalf of the plaintiff for the policy period during which the benefits are payable.  Any party to the action shall be permitted to introduce evidence regarding any of the matters described in this act.

Here the evidence will establish that Plaintiffs have collateral sources. Plaintiffs have receive SSI for the life of Sincere Smith and this income must be set off against the alleged loss wages.  In addition, Plaintiffs will be eligible for social security disability payments that should be set off against future losses.

Indeed, it is clear that the United States need not pay twice for the same injury simply because the Plaintiff has filed under the FTCA. See, e.g., <u>Brooks v. United States</u>, 337 U.S. 49, 51, 69 S.Ct. 918, 919, 93 L.Ed. 1200 (1949) (servicemen's benefits should be deducted from a judgment obtained under the FTCA).

**AS AN EVIDENTIARY ISSUE, PLAINTIFFS HAVE LISTED
NUMEROUS TREATING DOCTORS IN THE FINAL PRETRIAL ORDER AND
STATED THAT THEY WILL TESTIFY ON PROGNOSIS AND THE CAUSE OF
THE PLAINTIFFS INJURIES.   RULE 26 PRECLUDES SUCH TESTIMONY.**

Rule 26 clearly requires that physicians presenting expert
testimony provide reports that comply with that rule.   In the
absence of an expert report, a physician testifies only in
accord with Rule 701, to what he or she has seen, heard and
done.   Testimony beyond Rule 701 requires a foundational report
that complies with Rule 26.

In this case, Plaintiff has listed treating doctors but
then purports to present their testimony on prognosis and other
expert type issues.   Defendant has no objection to their
testimony on what the experts saw and did, but, Plaintiff has
not complied with rule 26 and testimony on causation from these
treating doctors should therefore be excluded. *See e.g.,
Phillips v. American Honda Motor Co.*, 285 Fed. Appx. 537,(11th
Cir. 2007) (trial court did not abuse its discretion in barring
testimony of treating physicians); *Allen v. Parkland School
Dist.* 230 Fed.Appx. 189 (3d Cir.2007)(Limiting the testimony of
a plaintiff's treating physicians to facts gained in their
treatment of the plaintiff, on the ground that the plaintiff had
failed to designate the physicians as experts or supply expert
reports for them by a court-ordered deadline, was not an abuse
of discretion...").

**Conclusion**

The court lacks jurisdiction to hear this matter and the evidence will establish that defendant did not proximately cause injuries to plaintiffs.  In addition, the defendant United States was not fully informed on the condition of the child in the care of co-defendant nurses.

Plaintiffs treating physicians should not be permitted to testify on matters of expertise.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
UNITED STATES ATTORNEY


S/Dorothy Donnelly

Dorothy Donnelly
Assistant US Attorney