## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY
### TRENTON VICINAGE

| | | |
|---|---|---|
| **Tameika Smith,** *individually and* | : | |
| *as the parent and natural guardian of* | : | |
| **Sincere Smith,** *a minor* | : | |
| | : | DOCKET NO. **03-5519 (JAP/TJB)** |
| *vs.* | : | |
| | : | |
| **CHS, Inc.**, *individually and/or doing* | : | *Civil Action* |
| *business as* **CHS, Inc. - Mercer Campus** | : | |
| *and/or doing business as* | : | |
| **Capital Health System at Mercer, et al.** | : | **PLAINTIFF'S NOTICE OF MOTION** |
| | : | ***IN LIMINE*** **OR, ALTERNATIVELY,** |
| | : | **FOR A** *DAUBERT* **HEARING,** |
| | : | **REGARDING THE QUALIFICATIONS** |
| | : | **AND REPORTED OPINIONS OF** |
| | : | **PROPOSED DEFENSE EXPERTS** |
| | : | **CHARLES BRILL, M.D. AND** |
| | : | **DONALD YOUNKIN, M.D.,** |
| | : | **REGARDING LIFE EXPECTANCY** |

TO: Dorothy Donnelly, Esquire    Thomas M. Walsh, Esquire
   United States Department of Justice  Parker McCay, PA
   402 East State Street, Room 430   Three Greentree Centre
   Trenton, NJ  08608      7001 Lincoln Drive West
                 Marlton, NJ  08053
   Charles C. Daley, Jr., Esquire
   1314 Hooper Avenue, Building A
   Toms River, NJ 08753

   ***PLEASE TAKE NOTICE*** that as soon as counsel may be heard in advance of trial, Plaintiff, by and through her undersigned counsel, will apply to the United States District Court, District of New Jersey, for an Order precluding defense experts, Drs. Brill and Younkin, from testifying at trial regarding their reported opinions on Sincere Smith's life expectancy, and/or for a *Daubert* hearing regarding the matter at issue.  Attached is a Certification and Affidavit in support of the Motion, and a proposed form of Order.

   I hereby certify that no Brief is filed simultaneously herewith, as all facts and issues necessary for the Court's determination in the within application are presented in the attached Certification and Affidavit.  Plaintiff consents to disposition on the papers, unless opposed.

   Trial Date:  March 3, 2008

            Respectfully submitted,
        By:  /s/ Paul D. Brandes, Esq.
            Paul D. Brandes, Esquire (9807)
            **VILLARI, BRANDES & KLINE, P.C.**
            4101 Route 42
            Turnersville, NJ  08012
            (856) 354-8717
Dated: February 20, 2008     *Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
### TRENTON VICINAGE

---

| | | |
|---|---|---|
| **Tameika Smith,** *individually and* | : | |
| *as the parent and natural guardian of* | : | DOCKET NO. **03-5519 (JAP/TJB)** |
| **Sincere Smith,** *a minor* | : | |
| | : | *Civil Action* |
| *vs.* | : | |
| | : | |
| **CHS, Inc.,** *individually and/or doing* | : | |
| *business as* **CHS, Inc. - Mercer Campus** | : | |
| *and/or doing business as* | : | |
| **Capital Health System at Mercer, et al.** | : | **ORDER** |
| | : | |

---

A Motion *in Limine* having been filed by Paul D. Brandes, Esquire, counsel for Plaintiff, for an Order precluding defense experts, Drs. Brill and Younkin, from testifying at trial regarding their reported opinions on Sincere Smith's life expectancy, and/or for a *Daubert* hearing regarding the matters at issue, and the Court having considered the Motion,

***IT IS***, on this _____ day of _____, 2008 ORDERED that Plaintiff's Motion is ***GRANTED***;

***IT IS FURTHER ORDERED*** that defense experts, Charles Brill, M.D. and Donald Younkin, M.D., are prohibited from testifying at trial regarding the issue of Sincere Smith's life expectancy.

*− or −*

***IT IS FURTHER ORDERED*** that a *Daubert* hearing will be held on the _____ day of _____, 2008, at _____ a.m./p.m., before the Hon. Joel A. Pisano, U.S.D.C.J., regarding the aforesaid experts 'reported opinions on the life expectancy issue.

***BY THE COURT:***

_____
U.S.D.C.J.

(   )  Unopposed

(   )  Opposed

*UNITED STATES DISTRICT COURT*
*DISTRICT OF NEW JERSEY*
*TRENTON VICINAGE*

| | | |
|---|---|---|
| **Tameika Smith,** *individually and* | : | |
| *as the parent and natural guardian of* | : | |
| **Sincere Smith,** *a minor* | : | |
| | : | DOCKET NO. **03-5519 (JAP/TJB)** |
| *vs.* | : | |
| | : | |
| **CHS, Inc.,** *individually and/or doing* | : | *Civil Action* |
| *business as* **CHS, Inc. - Mercer Campus** | : | |
| *and/or doing business as* | : | **CERTIFICATION IN SUPPORT OF** |
| **Capital Health System at Mercer, et al.** | : | **PLAINTIFF'S NOTICE OF MOTION** |
| | : | ***IN LIMINE*  OR, ALTERNATIVELY,** |
| | : | **FOR A *DAUBERT* HEARING,** |
| | : | **REGARDING THE QUALIFICATIONS** |
| | : | **AND REPORTED OPINIONS OF** |
| | : | **PROPOSED DEFENSE EXPERTS** |
| | : | **CHARLES BRILL, M.D. AND** |
| | : | **DONALD YOUNKIN, M.D.,** |
| | : | **REGARDING LIFE EXPECTANCY** |

Paul D. Brandes, Esquire, of full age, hereby certifies the following:

1.      I am an attorney licensed to practice law in the state of New Jersey and am attorney of record for Plaintiff herein.  I have personal knowledge of the facts contained herein; I am authorized to make this Certification.  I am a shareholder in the law firm of Villari, Brandes & Kline, P.C.

2.      I make this Certification in support of Plaintiff's Motion *in Limine* to preclude defendants from introducing testimony and/or opinions at trial from proposed defense experts, Charles Brill, M.D. and Donald Younkin, M.D., pertaining to the life expectancy of Sincere Smith, a minor, and/or for a *Daubert* hearing regarding the matter at issue.

3.      This is an obstetrics medical and nursing malpractice and associated corporate negligence case arising from medical and nursing care provided to plaintiff, Tameika Smith, late in her pregnancy with her son, Sincere Smith.  Plaintiff asserts that as a direct result of the negligence of the defendants, Ms. Smith's pregnancy induced hypertension and/or preeclampsia,

and concerning fetal heart monitor tracings were not timely diagnosed and treated, resulting in, among other things, severe and debilitating injuries to her son, Sincere Smith, a minor.

4.    The parties have listed and filed reports from various expert witnesses.

5.    Defendants, CHS, Inc., Capitol Health System at Mercer, Michelle Doohaluk, R.N., Kristin McGinnis, R.N., Denise Richardson, R.N. and Chris Cameron-Tini, R.N., produced a report (and supplement thereto) by proposed expert, Charles Brill, M.D., a pediatric neurologist.  A copy of the reports and curriculum vitae of Dr. Brill are attached hereto as Exhibit "A."

6.    Defendant, United States of America, produced a report by proposed expert, Donald Younkin, M.D., a pediatric neurologist.  A copy of the report of Dr. Younkin is attached hereto as Exhibit "B" (no curriculum vitae was ever produced by the defendant).

7.    Dr. Brill summarily opines in his report that Sincere Smith has a dramatically reduced life expectancy based upon three or four references in the literature.

8.    Specifically, Dr. Brill opines, "The three references I have give a 50% life expectancy [sic] of between 5-10 years of additional years. [sic]." *See*, Exhibit "A."

9.    Dr. Younkin adopts Dr. Brill's opinion on life expectancy and the bases for that opinion.

10.    In that regard, Dr. Younkin writes, "Dr. Brill estimates tha: [sic] Sincere Smith has a 50% chance of living an additional 5-10 years.  There is no way to know how long Sincere will live, but Dr. Brill's estimate is reasonable." *See*, Exhibit "B."

11.    Dr. Brill's opinion on the life expectancy issue (and thus Dr. Younkin's) is wholly based on the writings of others and is not based on any recognized, accepted or valid methodology within his field as a clinical medicine doctor.

12.    Dr. Brill's opinion (and thus Dr. Younkin's) is based solely upon three or four literature references, which themselves do not use scientifically accepted methodology.

13.     Plaintiff has employed a nationally prominent bio-statistician to evaluate the methodology and information used by Dr. Brill (and thus Dr. Younkin) in coming to the noted opinions on Sincere's life expectancy.

14.     Susan Shott, Ph.D., a tenured professor at Rush Memorial Medical Center in Chicago, has provided an Affidavit outlining her qualifications and the ways in which Dr. Brill's methodology and opinions are unacceptable or junk science.  A true and correct copy of Dr. Shott's Affidavit is attached hereto as Exhibit "C."

15.     According to Dr. Shott:

a.      Dr. Brill does not appear to have any expertise in the fields of statistics, epidemiology or other scientific fields used to determine life expectancy;

b.      Dr. Brill proffered as part of his report a few pages from four published articles on which he fully based the opinion on life expectancy;

c.      It is not clear how Dr. Brill used the excerpts from the articles to arrive at his conclusions regarding Sincere Smith's life expectancy, but nonetheless the use of the articles is an inappropriate methodology.

d.      Dr. Shott explains that for scientific methodology to be valid, at a minimum, it must be replicable.  Yet Dr. Brill's methodology fails to meet even this minimal requirement as he does not provide any explanation of the steps he followed to obtain his result beyond just copying from an outdated, misleading publication;

e.      Dr. Brill selected only a few articles to the exclusion of the vast literature on the subject matter relevant to the issue, and offered no explanation for why he selected the subject articles and ignored other literature;

d.      Dr. Brill's report offers no explanation as to how he was able to use the information in the few articles cited to arrive at his conclusions;

f.      According to Dr. Shott, a valid scientific methodology for the calculation of a person's life expectancy requires an accurate evaluation and assessment of the person's relevant risk factors for death.  To assure validity, the samples of patients used to obtain a life expectancy estimate must be *similar to* the person whose life expectancy is being calculated, with respect to the most important characteristics relevant to survival.  However, the samples on which Dr. Brill's cited articles rely are thoroughly dissimilar from Sincere Smith's situation in many respects, thus illustrating just one facet of the unacceptable methodology employed by Dr. Brill.  For example:

i.      Sincere Smith is being cared for by his mother and private healthcare providers, not at a state institution in California like the children described in Dr. Brill's adopted samples;

ii.     According to Dr. Shott, studies based on samples of severely disabled children who receive good quality private care have found much higher survival rates and lengths for such children;

iii.    According to Dr. Shott, a life expectancy estimate methodology which fails to take into account good quality private care is invalid on its face -- as in the case of Dr. Brill's reported opinion -- given the subject of his estimate was and is receiving good care;

iv.    The samples used in Dr. Brill's selected articles include children who received care as far back as the 1970's and 1980's, again illustrating the deficient methodology given the significant advances in medicine over the ensuing decades;

v.     In recent years, the life expectancy of individuals such as Sincere Smith has dramatically increased thanks to medical progress and improved attitudes in caring for individuals with severe disabilities, as acknowledged by the National Institutes of Health (which notes that due to advances in medical care in recent years, 65-90 percent of patients with cerebral palsy live into adulthood);

vi.    Life expectancy estimates for Sincere Smith that fail to take these improvements into account are invalid.

16.     Ultimately, Dr. Shott concludes that based upon all of the factors set forth in her Affidavit, Dr. Brill's life expectancy opinion is not based on any valid scientific methodology and his life expectancy estimate is invalid and not trustworthy.

17.     While use of informed differential diagnosis and informed clinical medicine prognosis are recognized as reliable methodologies used by clinical medicine doctors in the practice of clinical medicine, Dr. Brill clearly did not use these methodologies to arrive at his reported conclusion regarding Sincere Smith's life expectancy.  His report, and that of Dr. Younkin are absolutely clear on this point.  They relied solely on the aforesaid articles to arrive at their estimates.

18.     In arriving at a differential diagnosis or prognosis, a physician must take into account a patient's history, physical examination findings and test results and then apply his/her own specialized training, knowledge and experience to arrive at a diagnosis or prognosis.

19.     Dr. Brill and Dr. Younkin did not apply the methodology of informed clinical differential diagnosis or prognosis, but rather, simply took certain characteristics displayed by Sincere Smith (*e.g.*, head control, mobility, self feeding) and plugged them into an outdated, overly generalized and non-clinical statistics table which then gave a percentage chance of survival for individuals with allegedly similar characteristics.

20.     The fact that Dr. Brill did not use a diagnosis or prognosis methodology and instead relied wholly on the articles to support his conclusion (that Sincere has "a 50% life expectancy [sic] of between 5-10 years of additional years. [sic]") is evidenced by the fact that in his initial report he did not provide any statistical analysis and simply concluded in what is certainly an objectionable fashion that certain allegedly deleterious factors "drastically shorten" Sincere Smith's life expectancy.[1]   Only after he was asked to give a specific prediction of life expectancy did Dr. Brill use the tables.

21.     Likewise, Dr. Younkin certainly did not use a differential diagnosis or prognosis methodology given that he relied wholly on the analysis of Dr. Brill.

22.     Since Dr. Brill and Dr. Younkin did not use any sort of reliable or acceptable methodology to arrive at their conclusions, their opinions regarding life expectancy should be precluded.

23.     Moreover, not only is Dr. Brill's methodology unreliable, the articles he relied upon were not based upon scientifically reliable methodology and, therefore, could not provide an acceptable basis for opinions regarding Sincere Smith's life expectancy.

---

[1] Just as a witness testifying at a motor vehicle accident trial cannot testify that he saw the car moving "fast" -- such testimony inviting solely speculation by the finder of fact -- neither can a doctor merely state that a given person's life expectancy is "drastically shortened," which certainly can mean different things to different people and again invites improper speculation by the finder of fact.

24.     For example, data used to arrive at statistical figures in articles such as those used by Dr. Brill is often derived from reports used for placement of disabled individuals, not for medical treatment.

25.     As a result, the information contained in the articles has no medical utility.

26.     However, virtually all of the information used to characterize a person in a table of projected live expectancy –including toileting skills, mobility and degree of brain damage – is derived from these placement reports.

27.     Furthermore, since the reports are often used for placement purposes, no physician or other appropriate expert reviewed the raw data derived from the reports or compared the data with the actual patients or their medical records.

28.      Additionally the articles relied upon by Dr. Brill fail to identify or determine the ultimate causes of death.  Therefore, individuals who died of conditions unrelated to cerebral palsy were likely included in the study.

29.     Because the articles Dr. Brill (and thus Dr. Younkin) relied upon were not based upon scientifically reliable methodology and cannot provide an acceptable basis for opinions regarding Sincere Smith's life expectancy, Dr. Brill's (and Dr. Younkin's) opinions regarding life expectancy should be precluded.

30.     Federal Rule of Evidence 702 provides:  "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."(emphasis added).

31.     Rule 702 was amended in 2000 in response to *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993), and to the many cases applying *Daubert*.

32.     The Supreme Court in *Daubert* made it the role of the trial judge to act as a "gatekeeper" to ensure that any and all expert testimony or evidence is not only relevant, but also reliable.

33.     In interpreting the second requirement of Rule 702, courts have concluded that "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 742 (3d Cir.1994) (citing *Daubert,* 509 U.S. at 589, 113 S. Ct. at 2794-95).

34.     In order for the expert testimony to be "reliable," courts have required that the testimony be based on the "methods and procedures of science," rather than on "subjective belief or unsupported speculation." *Paoli,* 35 F.3d at 744.

35.     According to *Paoli*, there are several factors that a district court should take into account in evaluating whether a particular scientific methodology is reliable. *See Paoli,* 35 F.3d at 742.

36.     The nonexclusive guidelines, drawn from *Daubert* and the Third Circuit Court of Appeal's opinion in *United States v. Downing,* 753 F.2d 1224 (3d Cir.1985), include:

(1)     whether a method consists of a testable hypothesis;

(2)     whether the method has been subject to peer review;

(3)     the known or potential rate of error;

(4)     the existence and maintenance of standards controlling the technique's operation;

(5)     whether the method is generally accepted;

(6)     the relationship of the technique to methods which have been established to be reliable;

(7)     the qualifications of the expert witness testifying based on the methodology; and

(8)     the non-judicial uses to which the method has been put.

*Paoli,* 35 F.3d at 742 n. 8 (citing *Daubert* and *Downing*).

37.     In the case at bar, Dr. Brill's and Dr. Younkin's opinions on life expectancy fail to meet any of the above requirements.

38.     No reasonable clinical medicine doctor relies upon incongruous statistical data pertaining to patients significantly dissimilar to the doctor's patient in order to arrive at an opinion on his patient's life expectancy.

39.     No reasonable clinical medicine doctor blindly looks to decades old statistics to calculate or express present day concepts where the old statistics were based on old, outdated medical concepts or knowledge.

40.     No reasonable clinical medicine doctor unschooled in statistics and epidemiology would venture to profess an opinion on matters of life and death where the basis for the opinion is alleged statistics and epidemiology.

41.     No reasonable clinical medicine doctor would rely on a methodology for calculating life expectancy which has not been accepted as valid by the peer reviewed clinical medicine community.

42.     Finally, no reasonable clinical medicine doctor actually calculates life expectancy on behalf of his/her patient in the manner done in this case; such methods have no non-judicial (*i.e.* medical care) utility and should be rejected by this Honorable Court.

43.     Beyond the issue of Dr. Brill's unacceptable methodology, he and Dr. Younkin are also thoroughly unqualified to even comment on the issue as they present it.

44.     An expert qualified in one subject matter does not thereby become an expert for all purposes.

45.     Testimony on subject matters unrelated to the witness's area of expertise is prohibited by Federal Rule of Evidence 702.  See, e.g. Milano by Milano v. Freed, 64 F.3d 91,

97 (2d Cir. 1995) (pediatric neurologist experts not competent to testify about standard of care of radiologist); <u>Mancuso v. Consolidated</u> <u>Edison Co. of N.Y.,</u> 967 F. Supp. 1437 (S.D.N.Y. 1997) (rejecting the qualifications of a proffered "expert" concerning PCB exposure, although he was a medical doctor, because he had no experience with toxic torts and his "self-education" in the effects of PCBs was either insufficient or belied by his lack of knowledge under cross-examination); <u>Diaz v. Johnson Matthey, Inc.</u>, 893 F. Supp. 358, 372-73 (D.N.J. 1995) (disqualifying a pulmonologist from testifying that the plaintiff had a platinum allergy, because the witness was not an epidemiologist or a toxicologist, had "no other qualifications other than his medical education and his years practicing as a pulmonologist," had only casually studied the literature on platinum allergy, and had never previously treated a patient suffering from platinum allergy); <u>Wade-Greaux v. Whitehall Labs., Inc.,</u> 874 F. Supp. 1441, 1476 (D. V.I. 1994) (a witness educated as a pediatrician, pharmacologist, and toxicologist was not qualified to testify regarding the cause of birth defects, because he had merely reviewed selected literature on the subject for the purposes of litigation), aff'd without op., 46 F.3d 1120 (3d Cir. 1994).

46.     More specifically, this Court has held that expert testimony should be proffered by an expert who is "qualified by their own knowledge and experience and ***in the same profession***" so that the expert can testify as to whether the health care provider failed to excise the degree of knowledge and skill which usually pertains to other members of his profession. <u>Mottola v. City of Union City</u>, 2007 U.S. Dist. LEXIS 51466 (D.N.J. 2007) (emphasis added); *see also* N.J. Stat. § 2A:53A-41 (requiring physicians testifying in medical malpractice actions to be of the same specialty or subspecialty as the defendant).

47.     However, Drs. Brill and Younkin are not qualified to render statistical or epidemiologic opinions about Sincere Smith's life expectancy, because they are not statisticians nor are they epidemiologists.  <u>See, e.g.,</u> <u>Louis Vuitton Malletier v. Dooney & Bourke, Inc.</u>, 2007

U.S. Dist. LEXIS 92167 (S.D.N.Y. 2007) (finding expertise in colorimetrics does not establish expert's expertise as a statistician).

48.     Drs. Brill and Younkin do not specialize in biostatistics, epidemiology, econometrics, and psychometrics – fields with formal training in statistics.

49.     They have no special training or experience in *statistically* or epidemiologically evaluating life expectancy for patients like Sincere.

50.     They never participated in any studies or published any articles regarding life expectancy statistics.

51.     Further, regardless of Dr. Brill's and Dr. Younkin's purported general experience in life expectancy, they cannot competently present at trial statistical or epidemiological opinions or evidence.

52.     As the Court noted in <u>Erickson v. Baxter Healthcare, Inc</u>., 131 F. Supp. 2d 995 (D. Ill. 2001):

> Although Rule 702 allows witnesses to be qualified on the basis of experience, and permits them to testify in the form of an opinion,... <u>it does not permit experts to testify to any opinion based on general experience</u>. <u>Daubert</u> clearly requires that opinions given under Rule 702 "pertain to 'scientific knowledge,' " not "subjective belief or unsupported speculation."... [The proposed expert] must point to some specific relevant experience that would allow [the Court] to determine that [the proposed expert's] statistical testimony is reliable.  <u>To allow doctors to testify about specific statistical or medical questions and base their testimony only on general experience would be to say that doctors are qualified experts on every medical subject merely because they wear white coats.</u>

<u>Id.</u> at 999-1000 (emphasis added) (internal citations omitted).

53.     Because Drs. Brill and Younkin are not qualified to conduct or interpret statistical or epidemiologic analyses, their reported opinions on life expectancy could only arguably be admissible if they are permitted to give an opinion by relying completely on other supposed experts.

54.     It is true that testifying experts are permitted to rely on opinions of outside experts in helping to form or support part of the testifying expert's otherwise competent opinion, but only so long as the outside opinions are of the type that would be reasonably relied upon by other experts in the testifying experts' field.  Fed.R.Evid. 703.

55.     However, in doing so, the testifying expert witness must in the end be giving his *own* opinion. He cannot simply be a conduit for the opinion of an un-produced expert. See, e.g. Dura Automotive Sys. v. CTS Corp., 285 F.3d 609 (7th Cir. 2002).

56.     Defendants have not produced the statisticians or others who worked on the three or four excerpted articles offered by Dr. Brill (and Dr. Younkin via incorporation by reference). Nor have Drs. Brill and Younkin indicated that they conferred with the authors before arbitrarily reaching epidemiological/statistical opinions noted in their reports.

57.     Further, the articles they rely upon were not based upon scientifically reliable methodology. Therefore, the articles could not provide a proper basis for opinions regarding Sincere Smith's life expectancy.  Indeed, because of the highly questionable if not rejected nature and content of the articles, they certainly would not be the type of information reasonably relied upon by doctors such as Drs. Brill and Younkin in clinical practice.

58.     Most interesting is that in the absence of their own studies, Drs. Brill and Younkin did not turn to *medical* literature in the relevant field as the basis for reaching an opinion, but rather to outdated, dissimilar statistical and epidemiological data and literature written by non-clinicians and non-doctors.

59.     For these reasons, in addition to those concerning faulty methodology, Drs. Brill and Younkin are not even qualified to testify on their reported life expectancy opinions and they should be precluded from testifying to the issue on this basis as well.

60.     Moreover, their reported opinions concerning life expectancy should be excluded under *Daubert*, F.R.E. 702 and 703 because they constitute junk science and are nothing more

than conduit opinions/testimony taken from a non-testifying alleged expert on a matter outside of

their field of expertise and from data which has itself been discredited by appropriately

credentialed professionals.

WHEREFORE, plaintiff respectfully requests that this Honorable Court grant her Motion

*in Limine* and thereby preclude Dr. Brill and Dr. Younkin from testifying at trial regarding life

expectancy, or, schedule a *Daubert* hearing on the matter.

*I hereby certify that the foregoing statements are true. I am aware that if any of the*

*foregoing statements are willfully false, I am subject to punishment.*

Respectfully submitted,

VILLARI, BRANDES & KLINE, P.C.

By:     /s/ Paul D. Brandes, Esq.
        Paul D. Brandes, Esquire (9807)
        4101 Route 42
        Turnersville, NJ  08012
        (856) 354-8717
        *Attorneys for Plaintiff*

Dated: February 20, 2008

*UNITED STATES DISTRICT COURT*
*DISTRICT OF NEW JERSEY*
*TRENTON VICINAGE*

---

| | | |
|---|---|---|
| **Tameika Smith,** *individually and* | : | |
| *as the parent and natural guardian of* | : | |
| **Sincere Smith,** *a minor* | : | |
| | : | DOCKET NO. **03-5519 (JAP/TJB)** |
| *vs.* | : | |
| | : | |
| **CHS, Inc.,** *individually and/or doing* | : | *Civil Action* |
| *business as* **CHS, Inc. - Mercer Campus** | : | |
| *and/or doing business as* | : | |
| **Capital Health System at Mercer, et. al.** | : | **PROOF OF SERVICE** |

---

     I, Paul D. Brandes, Esquire, of full age, hereby certify that on February 20, 2008, I served via ECF Filing the within Motion *in Limine* and/or for *Daubert* hearing regarding life expectancy opinions of Drs. Brill and Younkin, with Certification, Affidavit and proposed Order, upon:

Dorothy Donnelly, Esquire
United States Department of Justice
402 East State Street, Room 430
Trenton, NJ  08608
*For defendant, USA*

Thomas M. Walsh, Esquire
Parker McCay, PA
Three Greentree Centre
7001 Lincoln Drive West
Marlton, NJ  08053
*For defendants, Hospital and Nurses*

Charles C. Daley, Jr., Esquire
1314 Hooper Avenue, Building A
Toms River, NJ 08753
*For defendant, USA (as co-counsel)*

     I hereby certify that the foregoing statements are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

                          VILLARI, BRANDES & KLINE, P.C.

                By:    /s/ Paul D. Brandes, Esq.
                          Paul D. Brandes, Esquire (9807)
                          4101 Route 42
                          Turnersville, NJ  08012
                          (856) 354-8717
Dated: February 20, 2008           *Attorneys for Plaintiff*